## GRAND LODGE OF MARYLAND, KNIGHTS OF PYTHIAS ET AL. *v.* THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[Nos. 35, 36, April Term, 1929.]

*Decided June 25th, 1929.*

The cause was argued before BOND, C. J., ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Benjamin H. McKindless,* for the appellants.

*Herbert Levy, Assistant Attorney General,* and *Simon E. Sobeloff, Deputy City Solicitor of Baltimore City,* with whom were *Thomas H. Robinson, Attorney General,* and *A. Walter Kraus, City Solicitor,* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

In the two appeals presented by the record, the petitioners and appellants are the Grand Lodge of Maryland, Knights of Pythias, and the Maryland Pythian Castle Building Commission of Baltimore City, which are two corporations of this state. The first of these will be called the Grand Lodge and the second Building Commission. The appellees are the Mayor and City Council of Baltimore and the State Tax Commission. The principal question is whether the undisputed facts bring the petitioners within the exemption from

544

taxation created by section 4 of article 81 of the Code providing that: "The provisions of this sub-title shall not apply to * * * buildings, equipment and furniture of hospitals, asylums, charitable or benevolent institutions or to the grounds appurtenant thereto in any city or incorporated town of this state which are necessary to the respective uses thereof."

The Grand Lodge was incorporated in 1881 for benevolent and charitable purposes and for the general supervision and control of all subordinate lodges of the order in the State of Maryland. In 1926 the articles of incorporation were amended so that its corporate powers were enlarged to embrace any lawful act or thing which may be appropriate to promote and attain the objects and purposes for which the corporation was formed. The Grand Lodge has no capital stock, and obtains its funds from dues, fees, contributions, and gifts, and it has always had its office and corporate seat in Baltimore.

At a session of the members of the Grand Lodge of the Knights of Pythias of Maryland in April, 1906, a resolution was adopted authorizing the purchase of a suitable site in Baltimore and the erection thereon of a building for the use and benefit of the Grand Lodge; and delegating to a designated building commission the necessary powers to begin, finance, and complete the project; and requiring the conveyance of the real estate purchased to the corporation here called the Grand Lodge. The resolution was comprehensive in its provisions but these need not be set forth. It will be sufficient to note that the resolution, also, provided that the original property, at the corner of Gay and Lexington Streets in Baltimore, which was then occupied by the Grand Lodge, was to be sold in the discretion of the Building Commission and the proceeds applied towards the erection of the new building. And, finally, the resolution directed the commission to incorporate, if necessary more effectually to accomplish its object. Accordingly, in December, 1906, the members of the Building Commission incorporated under the name of the Maryland Pythian Castle Building Commission.

The certificate of the new corporation certified (1) that the operations of the corporation were to be carried on in the State of Maryland, and that its principal office was in Baltimore; (2) that the aggregate of the capital stock was fifty thousand dollars divided into shares of the par value of ten dollars a share; and (3) that the corporation was formed for the purpose of buying, selling, mortgaging, leasing, improving, disposing of or otherwise dealing in land in the state, and for the loan of money on real and personal property, and, also, for the purpose of a homestead or building association. It is obvious that the corporate powers obtained went beyond the contemplation of the resolution. However, the corporation issued but two outstanding shares of its stock to two of its incorporators; and confined its corporate activities, during a period of some sixteen or seventeen years, to the raising of funds, the receipt of the *per capita* tax levied upon the members of the order, sold the old site of the original Grand Lodge building, purchased the new location and was conveyed the fee simple title thereto by four deeds bearing date May 2nd, June 7th, Sept. 20th, 1916, and January 18th, 1917, respectively, collected the revenue therefrom, and paid the taxes thereon until and inclusive of the year 1926, when construction of the new building was begun.

The Building Commission had the lot at the corner of Charles and Preston Streets cleared of its improvements, and, in June, 1926, awarded the contract for the erection of the new building within one year, but the contractor failed to complete the work until January, 1928.

For the purpose of securing necessary funds, the Building Commission borrowed $300,000 of the Savings Bank of Baltimore, which it secured, on February 25th, 1927, by a first mortgage lien on the new lot; and, on June 1st, 1927, the Building Commission obtained an additional loan of $150,000 of the Safe Deposit & Trust Company of Baltimore, which it secured by a second mortgage lien on the same property. The Grand Lodge united in the execution of both of

these mortgages as a guarantor of the payment of the principal and interest of the mortgage debts, and of the due performance of the covenants of the mortgagor. On February 18th, 1928, the Building Commission delivered possession of the premises to the Grand Lodge, and, on March 20th, 1928, it conveyed the property, subject to these two mortgage liens, to the Grand Lodge. Since this conveyance to the Grand Lodge, the Building Commission has been dormant, having no corporate affairs except of a formal character.

The building erected was not occupied by the Grand Lodge until March, 1928. The floor space of the first and second floors is 10,000 square feet; and 7,932 square feet of the first floor is appropriated by two store rooms; and fourteen offices occupy 8,339 square feet of the second story. All the remainder of the building is dedicated to the use of the Grand Lodge. The anticipated yearly rentals from the store rooms and the offices are $25,000.

The substance of these facts is that, when the assessments and levies were respectively made for the tax years of 1927 and 1928, the fee simple title and possession of the land in Baltimore City was in the Building Commission upon the active trust that it, among other duties, would purchase the site and erect and complete thereon a building, which, together with its site, would be necessary to the use of the Grand Lodge, a charitable and benevolent institution of Baltimore; and, after fulfilling this part of its trust, would, in further performance of its trust, deliver possession, and convey the premises to the Grand Lodge clear and discharged of the trust. The question therefore is, Was the land assessable for the tax years of 1927 and 1928 to the trustee, which was in actual possession, and the owner of the legal title to the land in fee simple; or to the *cestui que trust* or equitable owner, whose right to the enjoyment of possession and to be granted an absolute title had not ripened.

The general rule is that, unless otherwise prescribed by statute, the trustee as the owner of the legal estate would be

assessed with the value of the land. As stated in *Cooley on Taxation* (4th Ed.), sec. 1097: "By the owner of property for the purpose of assessment is meant the legal, and not the equitable, owner; therefore trustees having the legal title are properly assessed." *Ibid,* sec. 1103; *Perry on Trusts* (7th Ed.), sec. 331. This rule is commended by its utility, simplicity, and universality; and so makes for the certain and prompt collection of taxes upon real estate. *Hill v. Williams,* 104 Md. 595, 603, 604. Although it is not so with respect to personal property (Code, art. 81, sec. 226), there is no statute affecting the application of the rule to real estate, and the various sections of the revenue law of the state that relate to the imposition of taxes upon real estate are consistent with the enforcement of the rule. See article 81, sections 1, 20, 56, 149, 163, 166, 166A, 170, 214. *Consumer's Ice Co. v. State,* 82 Md. 132, 136-139.

As early as *Latrobe v. Baltimore* (1862), 19 Md. 13, 20, 21, it was decided that, in the absence of any statutory mandate to the contrary, the holder of the legal title and not the *cestui que trust* is to be taxed. The ruling in that case is decisive of the question now under consideration. The court then said: "We are not aware that the Acts of Assembly, regulating the imposition and collection of taxes, have effected any modification of the rules of law which otherwise must govern the determination of this question. The appellee in resorting to its remedy at law assumes that the taxes assessed constitute a legal cause of action and that the appellant (who was the trustee), as the holder of the legal title of the property upon which the assessment was made is liable for its satisfaction. That taxes assessed upon a trust estate constitute a legal cause of action against the holder of the legal title, we do not doubt, for at law the legal estate in the hands of a trustee, has the legal incidents and obligations of an absolute title, subject only to the claims in equity of the *cestui que trust. Crabb on Real Property,* 55 Law Lib. 399, 97 Law Lib. 257; *Willis on Trustees,* 10 Law Lib. 21, 72, 83; *Denton v. Denton,* 17 Md. 403.

"In this case, the appellant was the holder of the legal estate, upon the valuation of which the taxes sought to be recovered were imposed, and upon our construction of the 13th article of the Bill of Rights" (now article 15, as amended pursuant to chapter 390 of Acts of 1914), "as well as upon the general rule stated, he was the proper person to be assessed for their payment." *Tyson v. State,* 28 Md. 577, 587; *Baltimore v. Sterling,* 29 Md. 48; *Appeal Tax Court v. Patterson,* 50 Md. 354, 370; *Cherbonnier v. Bussey,* 92 Md. 413, 422; *Baltimore v. Safe Deposit & Trust Co.,* 97 Md. 659, 662-664; *State Tax Commission v. Baltimore County,* 138 Md. 668, 677; *McLane v. Appeal Tax Court,* 156 Md. 133.

The petitioners, however, ask that the court disregard this established rule, upon the theory that the beneficial owner is the real and substantial owner; and, therefore, that the exemption in favor of the *cestui que trust,* if it were the legal owner in fee of the land and if all other conditions were fulfilled, should be given full effect during a period when the legal estate and actual possession of the land were in the trustee. The argument is that the taxes paid by the trustee are actually borne by the beneficial owner, since the estate of the trustee was wholly legal, although its trust was an active one until possession and title were taken by the Grand Lodge. To reach this conclusion it is, however, necessary to abandon a principle of taxation without any sanction from the Legislature, and to ignore a construction of the tax laws of the state which the court has consistently applied. It would, moreover, enlarge the exemption to include a class of taxpayers which are not within the language of the statute, and which can only be held to be within its meaning by a broad and liberal construction, which would be equivalent to a legislative act. If the court would entertain such a purpose because of equitable considerations, the Legislature has barred the way by concluding the exemptions created by the explicit command that "each and every one of said exemptions from taxation shall be strictly construed." Code, art. 81, sec. 4.

This statutory rule of construction is in accord with the rule established and applied in the decisions of this court, which defined the rule in *Broadbent Mantel Co. v. Baltimore,* 134 Md. 90, 93: "The fundamental rule governing the construction of exemptions is that the particular exemption claim cannot be sustained unless it is shown to be within the spirit as well as the letter of the law (*United Railways Co. v. Baltimore City,* 93 Md. 634), and the party asserting the exemption must show that the power to tax in the particular case has been clearly relinquished, and, as this court has said in *Appeal Tax Court v. Rice,* 50 Md. 312: 'If this has not been done the question must be resolved in favor of the state.' The court said in *Sindall v. Baltimore City,* 93 Md. 530: 'The taxing power is never presumed to be surrendered, and therefore every assertion that it has been relinquished must, to be efficacious, be distinctly supported by a clear and unambiguous legislative enactment. To doubt is to deny an exemption. The exemption when found to exist shall not be enlarged by construction. *Cooley on Taxation* (2nd ed.), p. 205.' " See *Frederick Electric Light Co. v. Frederick City,* 84 Md. 599, 603, 604; *H. M. Rowe Co. v. State Tax Commission,* 149 Md. 251, 261; *Baltimore v. Grand Lodge,* 60 Md. 280, 282-283; *Frederick Co. v. Sisters of Charity,* 48 Md. 34, 40-43; *The Redemptorists v. Howard County,* 50 Md. 449; *Appeal Tax Court v. St. Peter's Academy,* 50 Md. 343; *Anne Arundel County v. Annapolis & E. R. R. Co.,* 47 Md. 592, 611, 614; *Sutherland on Statutory Construction,* sec. 364; *Endlich on Interpretation of Statutes,* sec. 356.

Cases will be found where the appellate courts of other jurisdictions, in construing their respective revenue statutes, have determined that the exemption of charitable and benevolent institutions from taxation upon their property comprehend an equitable as well as a legal ownership. See *Cooley on Taxation* (4th Ed.), sec. 677, and citations in notes. However, these furnish no authority for a departure from our own considered rule, which not only arises upon precedent but

which is also made mandatory by legislative enactment. Moreover, differences in statutes and in the circumstances lessen the weight to be given the construction of revenue laws in force in foreign jurisdictions, and the record at bar does not afford an occasion to make an exception to the general rule that the assessment of real property should be against the owner of the legal estate, and that this owner must pay the taxes levied.

The creation of the Building Commission was the act of the Grand Lodge to serve its own interest and purpose. The corporate form and powers assumed by the Building Commission gave no indication of its origin nor of the trust which it was to discharge. The Grand Lodge's resolution, which declared the terms of the trust, was neither recorded nor was it a document which, when recorded, would have given constructive notice of its contents. Thus, on the record and according to every *indicia* of ownership, the Building Commission was the sole owner, and the officials charged with the assessment of property in Baltimore were neither put on inquiry nor on notice of a fiduciary relation which was known only to its parties. Tax assessors are but ill qualified to exempt real property according to equitable interests; and the valuation and assessment of land are an administrative function which a sound public policy would reduce to its simplest form. *Hill v. Williams,* 104 Md. 595, 603, 604. Again, during the period in which the taxes in question were levied, the holder of the legal estate in fee simple was in actual possession of the premises, and this possession, as well as the legal ownership, was to subsist until the trust was ended by the completion of the building in course of construction and the delivery and grant of the premises to the equitable owner. So, the beneficial enjoyment and use by the Grand Lodge did not begin until after the years for which the assessments involved here were made. Whether approached, therefore, from the standpoint of the administration of revenue laws or of the usufruct of the premises, the argument for the identification of the owner of the legal estate with the owner of the

equitable estate fails. Moreover, in controversies involving the construction of revenue laws which relate to the assessment, levy, imposition, and collection of taxes, the court is governed by rules of law and not by principles of equity; and so is not at liberty to allow an exemption which is not within either the letter or spirit of the statute. *Supra.*

A number of other questions were raised, but it will not be necessary to consider them, as an affirmance in both appeals results from the conclusion of the court on the point discussed.

*Orders affirmed in Nos. 35 and 36 Appeals,*
*with costs to appellees.*