## HARRIET L. HILL vs. HENRY WILLIAMS, City Collector.

*Taxation—Private Alley—Assessment to Owner of Fee—Extinguish-
ment of Easement—Advertisement of Property to be Sold for Taxes
—Exceptions.*

When the owner of a tract of land conveys a part thereof describing one
line as binding on an alley of a designated width to be left open for use
in common, and said alley is a part of the land of the grantor and not
a public alley, then such alley may be assessed for purposes of taxation
to the grantor and it is not exempted, because of the creation of a pri-
vate easement in it.

Such private alley may be sold for non-payment of taxes assessed on it although the effect thereof may be to destroy the easement.

An advertisement of land to be sold for non-payment of taxes is sufficient if it describes the land so that it may be identified. The quality of the estate held therein by the possessor need not be described.

A person entitled to an easement of way in land which is sold for non-payment of taxes, is not authorized to except to the sale on the ground that notice of the assessement was not given to the owner of the land.

*Decided December 20th, 1906.*

Appeal from the Circuit Court of Baltimore City (STOCK-BRIDGE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*C. Alex. Fairbank, Jr.,* for the appellant.

*First.* In reference to the character of the advertisement. The established and settled law seems to require that the advertisement must describe the property so definitely and precisely that purchasers may, without difficulty, estimate its value. In *Alexander* v. *Walter*, 8 Gill, 239, the advertisement stated that the property was on S street, without any further description. and was held to be insufficient and illegal. It was impossible for prospective purchasers to investigate it and ascertain its value. The same doctrine is also announced in *Kaufman* v. *Walker*, 9 Md. 240; *Reeside* v. *Peter*, 33 Md. 127; *Guisebut* v. *Etcheson*, 51 Md. 485; *Ronkendorff* v. *Taylor*, 4 Peters, 349; *Mason* v. *Fearson*, 9 How. 248, 260; *Early* v. *Doe*, 16 How. 610; *Richardson* v. *Simpson*, 82 Md. 155.

In the case at issue althongh known to the City Collector, no mention is made in the advertisement of sale, of the appellant's easement over the lot advertised for sale or that the same was a private alley; on the contrary it is advertised and described as a vacant lot and as No. 1638 Pennsylvania avenue. The appellant submits that this is contrary and in variance to the doctrine above announced. Such an advertise-

ment could only mislead, it fails to acquaint possible purchasers with the true conditions and especially with an element which would necessarily have much to do with the value thereof. The lot subject to the easement is one thing, but free of the easement it is entirely different, and between the two there is a wide difference in value.

*Secondly.* As to notice of the assessment. In order to support an assessment it seems to be accepted and established that notice thereof is necessary, and that an assessment without notice is not due process of law. *Welty on Assessments,* sec. 4; *Myers* v. *Baltimore County,* 83 Md. 377; *Baltimore County* v. *Winand,* 77 Md. 522; *Baltimore City Code,* sec. 843. In the case at bar such a notice is lacking.

*Thirdly.* The tax sale is defective, because by it there is attempted to be sold the easement of the appellant to use the said lot as an alley way, and because the assessment of the said lot includes an assessment of the easement of the appellant, which is not the subject of taxation independent of the lot to which the said easement is appurtenant or appendant.

In most cases and in most States the rule prescribed by the statutes is that lands and other real estates shall be assessed as such irrespective of the separate estates that individuals may have in them, but where easements are appurtenant to the realty they are taxed as part of the land to which they are appurtenant. *Cooley on Taxation,* 3 ed., pp. 739 and 740; *Winnipiseoga Lake Mnfg. Co.* v. *Gifford,* 64 N. H. 337.

Mrs. Hill is the owner of several lots of ground in Baltimore City, and as a part of that consideration and as an inducement to the purchase, she is expressly given the right to use an adjoining lot owned by the grantors as an alley-way. In other words, she is expressly given an easement over the adjoining land, which thereafter becomes appurtenant and appendant to her property. It inheres to it and is essentially necessary to her enjoyment, and is inseparable from her property. Its continuance as an alley is necessary, as it is a means of ingress and egress and forms a connection with the alley way in the rear of her property, and is also a means of drainage.

The easement is, therefore, appurtenant to her property, and as such should be assessed together with and is properly included in the assessment of her property, which includes all that is appurtenant to or incidental to the same. Any other method of assessment or taxation would violate vested rights and would amount to a taking of property without due process of law.

Therefore, the assessment of the vacant lot No. 1638 Pennsylvania avenue as such was invalid and misleading, in that the same should have been described as a lot of ground subject to an easement over the same for an alley way and the reversionary interest therein; if of any value, should have been assessed and taxed as such. If the law was otherwise, or if any other method of taxation was permissible, purchasers of property, especially in the city where there are numerous private streets and alleys abutting valuable property, would never be secure, there would be a constant menace to property owners and their estates would be absolutely dependent upon someone else, and the appellant therefore submits that the proper idea and theory as well as the established law, is that when the owner of the property pays taxes on his property, he also pays taxes for the easement over the adjoining street or alley or for any other easement that is appurtenant or appendant to his property and necessary for its enjoyment.

*Fourth.* It is submitted that the Legislature or State can only deal with streets, highways and alleys as such and can do nothing to obstruct the free passage of the same, and in this connection it is to be remembered that it is the right of the public to use the way and not the size of the way or the number of persons who choose to exercise that right that determines its character. *Elliott on Roads and Streets*, p. 24; *Rex v. Richards*, 8 T. R. 634.

An alley of small dimensions actually used by only a limited number of persons but which the public have a general right to use, may be regarded in the same manner as a public way. *Sharrett's Roads*, 8 Pa. St. 92. This doctrine is especially true where the abutting property owner has acquired and

purchased his property for a valuable consideration on faith of
the continuance of the adjoining street or alley.　*Elliott on
Roads and Streets*, secs. 22, 23, 24 and 25.

In the case at bar, while the alley way is a private one, it is
public in its nature, and the abutting property owners and the
general public dealing with and having relations with them
have the right to the continuous use of the same as an alley ;
they purchased their property for valuable consideration on
the faith that the alley would continue as such.　To sustain
the present tax sale would destroy the character of the alley
as such, affect and take away vested and private interests and
estates.

*W. Cabell Bruce* and *Richard B. Tippett*, for the appellee
submitted the cause on their brief.

The gist of the appellant's contention, is the claim that the
tax sale is defective, because the lot was assessed in gross
without differentiating the various interests that may have in-
hered in it and assessing the various interests separately.　In
other words, the appellant contends that her right or easement
over this lot was a separate estate which should be segregated
by the tax collector to her for taxation.

The intricate method of assessing and collecting taxes thus
pointed out by the appellant is entirely foreign to the scheme
of taxation in this State.　It is the custom and policy of this
State, when it becomes necessary to sell, for non-payment of
taxes, land in which several parties hold different estates, "to
sell fee simple estate in the exercise of its sovereign powers."
*Drydock Co.* v. *Baltimore*, 97 Md. 102.　In affirming this case
the United States Supreme Court, in 195 U. S. p. 381, says:
"*Commonly taxes on land create a lien paramount to all inter-
ests*, and *a tax sale extinguishes all titles and starts a new one.*"
To same effect see *Emory* v. *Boston Terminal Co.*, 178 Mass.
184.

In this State taxes are liens upon the physical property it-
self and not upon the interests that may be connected with or
grow out of it.　"There is nothing in our general tax system

which compels the collector to examine what title a party has to 'land with which he is assessed.". *Cooper* v. *Holmes*, 71 Md. 30.

The question is entirely settled by the case of *Textor* v. *Shipley*, 86 Md. 438. "If the tax deed is valid, then from the time of its delivery it clothes the purchaser not merely with the title of the person who had been assessed for the taxes and had neglected to pay them, but with a new and complete title in the land, under an independent grant from the sovereign authority, which bars or extinguishes all prior titles and encumbrances of private persons and all equities arising out of them." *Heffner* v. *Northwestern Insurance Co.*, 123 U. S. 751.

The appellant further says that the right of way or easement in this eleven-foot strip mentioned in her deed should have been assessed and taxed to her as part of her (the neighboring) property. The very authorities she mentions in support of this claim, however, do not measure up to it.

The Court, in *Manufg. Co.* v. *Guilford*, 64 N. H. 337, refused to consider certain water powers or reservoirs located on certain property in New Hampshire, but really appurtenant to certain mills further down the stream in Massachustts, and supplying power to the same as part of the Massachusetts mills, but said that for taxing purposes they were included in the taxed land in New Hampshire.

The appellant is not borne out by her citation of *Cooley on Taxation*, p. 739, which says, in addition to the language quoted by her, that the lands and other real estate shall be assessed as such irrespective of the separate estate that individuals may have in them.

Finally her claim to separate assessments is settled in the *Canton Company's case*, 63 Md. 234–235, which says: "It is not compatible with public convenience and the prompt collection of revenues to trace out all the subdivided or qualified interests that may be held in real estate and seek to hold the various owners responsible." Its policy is to assess the fee-simple of the land  *  *  *  leaving the parties interested to adjust the proportions of liability between themselves.

This strip of land was assessed in 1896 as having a value of $625. The Slingluff trustees accepted that assessment and paid the taxes on it down to 1901.

From the aforegoing authorities it must be presumed that all rights and interests in that lot were embraced in the assessment, that being the Maryland scheme of taxation, and when the taxes were not paid, all rights and interests were terminated by the seizure and sale by the sovereign authority.

The strip of land in question was never laid out as an alley or had any of the physical appearances as such. There is no surface drainage on the lot. It has never been paved and it looks like "any other vacant lot." Until 1892 it had a gateway across the Pennsylvania avenue front. From a most liberal standpoint it was merely a small private alley for the benefit of the immediate abutters.

McSHERRY, C. J., delivered the opinion of the Court.

This is an appeal from an order passed by the Circuit Court of Baltimore City. By that order a sale of certain real estate made by the Tax Collector of the city to satisfy unpaid State and city taxes was ratified and the objections which had been previously filed against the confirmation of that sale were overruled.

On November the sixteenth, nineteen hundred and three, the City Tax Collector duly advertised that he would sell at public auction at the Real Estate Exchange Salesrooms on December the fourteenth following certain described real estate upon which the taxes then due were in arrear. On the day designated the Collector sold the following described lot, being one of those named in the advertisement, viz., "Lot No. 2431 (1638 Pennsylvania avenue). Beginning on the northwest side of Pennsylvania avenue 86 feet 8 inches southeasterly from Sewell street and at the southeast line of a lot (owner unknown); thence southwesterly along said lot 87 feet; thence southeasterly 12 feet 6 inches to a lot (owner unknown); thence northeasterly along said lot 87 feet to Pennsylvania avenue, and thence northwesterly along said avenue 12 feet 6

inches to the beginning." "A vacant lot No. 1638. Assessed
to Slingluff Est. for State and city taxes 1901, 1902, and city
taxes 1903, $37.32." The lot was purchased at that sale by
by Charles McConnell in the name of George L. Mattingly
for three hundred and fifty dollars. On the seventeenth day
of December, 1904, the Collector, Mr. Henry Williams, re-
ported the sale to the Court; the papers were then referred to
an auditor and master, who on the fourth of January, 1905,
certified that the proceedings appeared to be regular. On the
succeeding day an order of Court was published warning all
persons interested in the said lot, which was described in pre-
cisely the same terms as it had been in the original advertise-
ment of sale, to appear in Court by the twenty-first day of
February, 1905, to show cause, if any they had, why the sale
should not be ratified and confirmed. On February the six-
teenth Mrs. Harriet L. Hill filed exceptions to the ratification
of the sale. Those exceptions are, first, that the lot of ground
although designated in the advertisement of sale as a vacant
lot * * * is an alley way eleven feet wide, or there-
abouts. Second: That said lot of ground was dedicated to
the use of the abutting property owners as an alley way by
the owners of the property, as by reference to a deed from
Fielder C. Slingluff and others, executors to Harriet L. Hill
will appear, wherein said owners call for said lot as an alley
way eleven feet wide to be left open for use in common. Third:
That Harriet L. Hill is the owner of a lot of ground binding
on said alley * * * and that inasmuch as the excep-
tant and the public have an easement over said lot for an alley
way, the exceptant suggests that said lot was not a proper
subject for taxation. Fourth: For other reasons to be as-
signed at the hearing. Testimony was subsequently taken
before an examiner and the case was later on heard with the
result already indicated.

It appears that on the eighth of December, 1890, the ex-
ecutors of the Slingluff estate conveyed to Mrs. Hill three
lots of ground fronting on the southwest side of Pennsylvania
avenue in Baltimore City, the northernmost one of which was

bounded on its northwesterly line by an alley "eleven feet wide to be left open for use in common." Before this conveyance in 1890 these lots and this alley way formed parts of a larger portion of land all of which was assessed to the Slingluff estate. The lots sold to Mrs. Hill were evidently transferred to her on the assessment book whilst the strip of twelve feet six inches spoken of as the alley "eleven feet wide" remained assessed to the Slingluff estate, and was treated as a vacant lot. It is quite apparent that the fee of that strip, lot or alley way, whatever it may be called, remained in the Slingluff executors subject to the easement which Mrs. Hill possessed in it.

The first, second and third objections to the ratification of the sale present substantially the same question, and that question is this: Assuming that the strip of ground twelve feet six inches wide which runs back from Pennsylvania avenue a depth of eighty-seven feet to a four-foot alley in the rear of the three lots owned by Mrs. Hill under the Slingluff deed is an alley way can it be assessed for purposes of taxation? It is not a public street or alley. It was designed for the use of the occupants of the three lots conveyed by the Slingluff deed to Mrs. Hill, and the only interest or estate acquired by the grantee under that deed in that strip of ground was a right of way from Pennsylvania avenue to the four-foot alley in the rear of her three lots. As the fee simple title remained in the Slingluff estate the land was properly assessed to that estate. It was no part of the duty of the Appeal Tax Court to inquire into or separately value the interest or easement which Mrs. Hill secured under the deed. And there is nothing in our general tax system which compels the collector to examine what title a party has to land with which he is assessed. The assessments are made by other officers, and he is not required to review or to verify their proceedings before making a sale. *Cooper et al.* v. *Holmes*, 71 Md. 20. It is not compatible with public convenience and the prompt collection of revenue for the State to trace out all the sub-divided or qualified interests that may be held in real estate, and seek to hold

the various owners responsible. Its policy is to assess the fee simple value of the land to the holder of the possession, where its real owner is not apparent or accessible, leaving the parties interested to adjust the proportions of liability between themselves. *Mayor, &c., Balto.,* v. *Canton Co.,* 63 Md. 218. Prior to the execution of the deed of 1890 by the Slingluff executors the legal title to both the lots now owned by Mrs. Hill and to the alley way belonged in fee to the Slingluff estate and was properly chargeable on the assessment books to the estate. After the conveyance of 1890 was made to Mrs. Hill, the three lots described therein were evidently transferred to her on the assessment books; and when the new assessment of 1896 was made those same lots were valued to her and the remaining one—the so-called alley way—was separately assessed in the name of the Slingluff estate, and so continued thenceforth up to the sale. There was no irregularity in the assessment when made in 1896, and the antecedent creation of a private easement in this strip of land could not, under any known legal principle, exempt it from taxation. It therefore continued to be taxable after the creation of the easement just as it had been before; and if the taxes were not paid it was liable to be sold, even though by such a sale the easement would be destroyed; because the purchaser at a tax sale, when the proceedings are regular, is clothed with a new and comple title in the land, under an independent grant from the sovereign authority, which bars or extinguishes all titles and encumbrances of private persons, and all equities arising out of them. *Textor* v. *Shipley,* 86 Md. 424. These observations dispose of the three objections first mentioned; and we turn to the remaining ones which have been interposed under the fourth or general exception; and they are (*a*) an alleged inadequate description in the advertisement of sale; (*b*) an alleged defect in the original assessment due to a failure to give notice to the owners. These grounds will now be considered.

(*a*) The advertisement of sale is addressed to the public and should of itself contain sufficiently definite terms of descrip-

tion, without further reference, to apprise the public of the property to be sold, and any description by the notice which informs the public of the property to be sold is sufficient. The identity of the property must be disclosed by the advertisement. *Reeside et ux.* v. *Peter*, 33 Md. 120. As it is the *identity* of the property and not the quality of the estate which the advertisement must describe, it would seem to be clear that the advertisement now objected to was amply full and sufficient. It gave the number of the lot on Pennsylvania avenue as 1638 and there is no pretense that there was any inaccuracy in the figures. It described it as beginning on the southwest side of Pennsylvania avenue, eighty-six feet and eight inches sontheasterly from Sewell street, and there is not a suggestion that there is the least vagueness or incorrectness in this. It gives the number of feet and inches which the lot fronts on Pennsylvania avenue and the number of feet of its depth, and states that it is assessed to the Slingluff estate. It is difficult to see how a more minute description could have been supplied. No one was misled—at least there is no intimation to that effect in the record—but on the contrary the husband of Mrs. Hill, who is her agent, attended the sale in company with a representative of the Title Company which had guaranteed the title to the lots, and permitted the strip of land to be purchased by McConnell for the sum of three hundred and fifty dollars though by paying the trifling sum of thirty-seven dollars and thirty-two cents and a small amount of costs he could have avoided a sale altogether. He permitted a whole year within which he might have redeemed the property, to go by after the sale, without availing of the right which the statute give to pay the taxes before a ratification of the sale. Surely it cannot under these circumstances be said that there was either any insufficiency in the description contained in the advertisement, or such an insufficiency as misled any one.

(*b.*) As to the alleged failure of the assessing officials to give notice of the assessment in the first instance but a few words need be said. Whether any notice was given to the Slingluff executors or not, to the effect that this lot or alley

way would be separately assessed in 1896, the fact is it was then thus valued and assessed, and with the knowledge that it was so valued they paid the taxes on it up to 1901 without objection of any kind. They accepted the assessment and paid the taxes on it, and they never have set up and are not now interposing any objection that the assessment was irregular or unlawful. In its last analysis Mrs. Hill's contention is not that *her* property was assessed without notice to *her*, but that the property owned by the *Slingluff* estate was assessed without notice to the *executors* of that estate. Suppose it was, that is not a fault of which she can complain.

It may be added in conclusion that there is no foundation in the record to support the suggestion that this so-called alley way is a public alley. If an alley way at all, it was a private way. If a private way the title was in the Slingluff estate because it had never been conveyed away by the executors. If the title remained in that estate, then, the land was subject to valuation and taxation, and if the taxes were not paid it was liable to be sold, just as it was sold.

Finding no error in the order which finally ratified and confirmed the sale it will be affirmed with costs.

*Order affirmed with costs
above and below.*