BONNEVILLE ET AL. *v.* STATE
(Four Appeals in One Record)

[No. 41, October Term, 1954.]

304

Decided February 17, 1955.

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Henry F. Lankford,* with whom were *Johnson & Johnson* on the brief, for the appellants.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *L. Creston Beauchamp, State's Attorney for Somerset County,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appellants, Walter Johnson and Joseph Weatherly, were separately indicted in the Circuit Court for Somerset County. The indictments against each of them are based upon Code (1951), Article 2B, Section 3(a), as amended by Chapter 58 of the Laws of 1952. That portion of Section 3(a) under which the prosecutions were brought reads as follows:

"It shall be unlawful for any person to * * * keep or suffer to be kept on his premises, in his possession or under his charge or control, for the purpose of sale and delivery within this State, any alcoholic beverage except as provided for in this Article."

Each indictment is in two counts. The first count charges that the defendant on a specified date and in Somerset County, Maryland, "unlawfully did keep or suffer to be kept on his premises in said county and state for the purpose of sale and delivery within said county and state alcoholic beverage, to wit, whiskey; * * * ." The second count charges that the defendant "at the time and place aforesaid, unlawfully did keep or suffer to be kept on his premises, in his possession, or under his charge and control, for the purpose of sale and delivery within the State of Maryland, alcoholic beverage, to wit, whiskey; * * *." It will be noted that the second count differs from the first by adding the phrase set forth in the statute, "in his possession, or under his charge and control" and by deleting reference to the specific county as the place in Maryland where the liquor was to be sold. Essentially, these indictments are in the words of the statute; and it is to be noted that they follow it to the point of copying the word "or" and not substituting for it the word "and". The defendants moved to dismiss the indictments on the ground of duplicity and their motions (which also contained another ground since abandoned) were overruled. Their cases then proceeded to trial before the Court, without a jury; and each of the defendants was found guilty and

was sentenced to a fine and imprisonment, the imprisonment being suspended upon condition that the fine be paid.

Their appeals bring up for review only the rulings upon the motions to dismiss; and the question on each appeal is whether or not these indictments are invalid because the offenses charged are stated disjunctively in the words of the statute here involved, using the word "or", and not conjunctively, substituting the word "and" in place of the word "or".

It is, of course, true that where an indictment is laid in the words of the statute, it will ordinarily be sufficient. *State v. Petrushansky,* 183 Md. 67, 36 A. 2d 533. However, where the statute forbids the doing of any of several acts stated disjunctively, it is also well settled in this State that if more than one of the prohibited acts is charged in a single count of an indictment, the word "and" must be substiuted for the word "or". An indictment so framed is not bad for duplicity; and at the trial, the particular offense may be established by proof of any one of the acts charged. *Leon v. State,* 180 Md. 279, 286, 23 A. 2d 706, 710; *Stearns v. State,* 81 Md. 341, 345, 32 A. 282, 283; *Thomas v. State,* 173 Md. 676, 197 A. 296; *Sturgill v. State,* 191 Md. 75, 59 A. 2d 763. Likewise, such an indictment is not bad for uncertainty. *Sturgill v. State, supra.* See also *Reynolds v. State,* 141 Md. 637, 119 A. 457. Cf. *Pritchett v. State,* 140 Md. 310, 117 A. 763, where separate offenses disjunctively stated in a statute were held properly charged in separate counts of an indictment.

As a matter of procedure, a motion to dismiss the indictment under Rule 3 of the Rules of Criminal Practice and Procedure, which has superseded a demurrer in cases where a demurrer would previously have been appropriate, is proper to test the sufficiency of the indictment. See *State v. Lassotovitch,* 162 Md. 147, 159 A. 362. The particular defect here charged is not one which might be overcome by furnishing a statement under Code (1951), Article 27, Section 708. That sec-

tion merely dispenses with the necessity of specifying in an indictment the particular kind of intoxicant alleged to have been unlawfully sold or disposed of, provided the indictment sets forth an unlawful sale of intoxicating liquor, and it gives the defendant the right to obtain from the State's Attorney, before trial, a statement of the particular variety of liquor expected to be proved.

The State, in its brief, cited Code (1951), Article 27, Section 692, in support of its contentions on the appeals of Bonneville and Sterling, which are referred to below. Though it did not also cite this Section with regard to the Johnson and Weatherly appeals, with which we are now concerned, it has been suggested that this Section prevents a reversal of the judgments against them. That Section, which had its origin in the Acts of 1852, Chapter 63, provides in part: "No indictment or presentment * * * shall be quashed, nor shall any judgment upon any indictment * * *, whether after verdict, by confession or otherwise, be stayed or reversed for" any of a number of specified defects "or by reason of any mere defect or imperfection in matters of form which shall not tend to the prejudice of the, defendant, nor for any matter or cause which might have been a subject of demurrer to the indictment * * *."

It seems too well settled to require extensive discussion that Chapter 63 of the Acts of 1852 did not preclude review on writ of error or appeal of the sufficiency of an indictment challenged by demurrer in the trial court. Such has been the consistent holding of this Court since *Cochrane v. State*, 6 Md. 400, decided in 1854. In the following cases, in addition to the *Cochrane* case, in which this statute has been referred to in the opinion of this Court or has been urged upon this Court by the State, an indictment (or one or more counts thereof) sustained by the trial court as sufficient has been held insufficient by this Court and a conviction based thereon has been reversed: *Spielman v. State,* 27 Md. 520 (where a demurrer interposed by the State to a plea

filed by the traverser was sustained by the trial court, but was held by this Court to mount up to the indictment, which was held defective, and the conviction was reversed) ; *Kearney v. State,* 48 Md. 16; *Avirett v. State,* 76 Md. 510, 25 A. 676. See also *State v. Butler,* 72 Md. 98, 18 A. 1105, where, after conviction and after the defendant had served a part of his sentence, he was permitted by the trial court to withdraw his plea and to demur, and his demurrer was sustained. It was held that the statute did not impair the revisory power of the trial court over its judgments. There are numerous cases in which this Court has applied the statute and has declined to consider the sufficiency of the indictment where no demurrer was interposed, and has indicated that if a demurrer had been filed, the question would have been considered. See, for example, *McCurdy v. State,* 151 Md. 438, 135 A. 161, and cases therein cited. In *Reynolds v. State,* 141 Md. 637, 119 A. 457, already referred to in connection with the proper form of pleading, the Court cited the statute in question to show that it was not necessary to pass on a certain matter sought to be raised by a motion to quash filed after verdict which could have been raised by demurrer but stated that it was only necessary to pass on the demurrer (which had been filed below and had been overruled), and then proceeded to do so.

Chapter 388 of the Acts of 1867 (Code (1951), Article 75, Section 10) did not create, but clearly recognized, the right to demur in criminal as well as in civil cases; and it expressly permitted the defendant to plead over if his demurrer was overruled, without withdrawing his demurrer, and provided that "upon appeal or writ of error [he] shall have the questions of law arising upon the demurrer decided and determined as fully to every intent as if the party demurring had not pleaded over." It will be noted that this Act is subsequent to the Act of 1852; but in view of the language of the 1852 statute and the construction of it since 1854, there is no con-

flict between the two. If there were, the later statute would prevail.

The particular portion of the statute now sought to be invoked is that dealing with matters of form, not prejudicial to the defendant. We have found no case in which it was applied where a demurrer or its equivalent had been seasonably interposed. It was relied on in *Hutson v. State,* 202 Md. 333, 96 A. 2d 593, where the trial court had permitted the indictment to be amended by correcting the name of someone other than the defendant before the jury was sworn (thus not falling under Code (1951), Article 27, Section 689), and this Court held that the amendment was unnecessary and nonprejudicial.

An examination of Rule 3 and Rule 9 of the Rules of Criminal Practice and Procedure and of the Reporter's Notes will show that demurrers and motions to quash were abolished by name, and motions to dismiss were substituted for them, and to this extent Rule 3 was expressly declared (by Rule 9) to supersede Section 692 of Article 27 and Section 10 of Article 75 of the Code. The points which theretofore could have been raised by any of the pleadings which were abolished by name continued to be available if incorporated in motions to dismiss and Rule 3 seeks to have all such matters raised before trial which can be so raised. (Exceptions are made to preserve rights to object at later stages to lack of jurisdiction or failure to state an offense.)

We hold, as did our predecessors, that an indictment charging offenses in the alternative is not sufficiently definite, and that such a defect is not merely one of form, and therefore Article 27, Section 692 is not applicable.

Two reasons are given for the rule requiring the use of the conjunctive where two or more acts prohibited disjunctively by a statute are alleged in one count. The first is that the defendant is entitled to be informed with certainty of the offense with which he is charged; the second is that he should be enabled to show, in the

event of a subsequent prosecution, that he has previously been convicted or acquitted of the same offense. (See, among many authorities, *Stearns v. State, supra,* and *The Confiscation Cases,* 20 Wall. (U. S.) 92.) Certainty is obviously desirable for each of these reasons; but as between them, the second is the more persuasive, because the conjunctive form of alleging offenses gives no real help to a defendant in knowing the charge which he must meet and in preparing his defense. The proof of any one of the charges conjunctively enumerated will sustain a conviction; and thus, as a practical matter, the defendant is called upon to defend himself against each and every charge alleged quite as fully as if the charges might be and were alleged alternatively. However, the rule is settled, as shown by *Sturgill v. State* and other cases cited above, that the conjunctive form is permissible and that proof of any one of the prohibited acts so charged is sufficient. If the question were a new one open for decision, it might be preferable to limit this rule rather than to extend it to indictments in the disjunctive.

With regard to double jeopardy, it seems that the use of the disjunctive may place the accused at a considerable disadvantage. From the face of the indictment and a general verdict of guilty it would be impossible to tell whether the defendant had been convicted of (a) or (b) or (c). Though it is possible to go into the record to obtain information with regard to the identity of the offense beyond what may appear in the indictment itself, *Wilson v. State,* 200 Md. 187, 88 A. 2d 564, and *Rouse v. State,* 202 Md. 481, 97 A. 2d 285, there might be a great deal of practical difficulty in ascertaining just what the evidence was and which of the several alternatives had served as the basis of conviction. There is no Maryland case of which we are aware in which there has been a subsequent prosecution for an act which had been charged either conjunctively or disjunctively as one of several acts in a previous indictment.

312

Since the usual test recognized in Maryland, as well as generally, is based upon the identity of the offense and the identity of facts so that proof of the second charge would have warranted conviction on the first, and since proof of any one of the several acts charged conjunctively in the first indictment would be sufficient for conviction thereunder, it seems clear that a plea of former jeopardy would be effective in a second prosecution for a single offense charged as one of several in a prior indictment. The Supreme Court has so held. *Crain v. U. S.*, 162 U. S. 625, 40 L. Ed. 1097. It has been said that the series of acts denounced by a single statute and included in one count constitute but one offense. *Bishop's New Criminal Procedure* (2nd Edition), Vol. 1, Section 436; *Clifford v. State*, 29 Wis. 327. This would seem impossible to establish in the case of disjunctive charges.

Returning to the State's brief, we find that the State does not dispute the general rule of the *Stearns* case and others following it, requiring the use of the conjunctive form, but asserts that there is an exception to it where the disjunctive is used in such a fashion as to indicate that the various phrases which it joins are synonymous or where the disjunctive is used in the sense of "to wit." The State then contends that the words of the statute involved in this case—" 'keep or suffer to be kept', etc."—are all tantamount to possession. No case in Maryland which involved such an exception to the general rule as that contended for by the State has been called to our attention, nor have we found any. There are, however, a number of cases in other jurisdictions supporting the exception; and there are likewise some cases in other jurisdictions which have declined to apply such a distinction in cases more or less similar to the instant case. Among them are cases where a charge of doing a particular act and of causing that act to be done, such as "to burn" and "to cause to be burned," are considered as separate offenses which may not be joined in the disjunctive in a single count. (See *Wharton's*

*Criminal Procedure,* 10th Edition, Section 278). Whether or not such an exception may be applied depends first upon whether or not the statutory phrases are synonymous or the word "or" may be considered as the equivalent of "to wit."

To keep some particular thing and to suffer it to be kept are ordinarily two quite different acts, for the first is an act which one does himself and the second is an act which he allows or permits someone else to do. Accordingly, in the present case, it seems clear that (unless there is something else in the statute to require a different result) the word "or" cannot be regarded as the equivalent of "to wit."

The main reliance of the State is placed upon the proposition that all of the phrases used in Section 3(a) now under attack "are synonymous in the sense that they all refer to possession." (Cf. *Parkinson v. State,* 14 Md. 184; *Franklin v. State,* 12 Md. 236; *Reynolds v. State, supra,* dealing not with possession, but with a single and unifying purpose of legislation.) There is no difficulty in reading the terms "on his premises," "in his possession" and "under his charge or control" in conjunction with the "keeping" of alcoholic beverages as relating to possession. It is grammatically difficult, however, to read "in his possession" or "under his charge or control" in conjunction with "suffering" alcoholic beverages "to be kept," for it would be a most unusual form of expression to say that a man "suffered alcoholic beverages to be kept in his possession or under his control." "Suffer" is evidently used in Section 3(a) in the sense of "allow" or "permit" (which are among its well recognized dictionary meanings); but it would not help to substitute either "allowed" or "permitted" for "suffered" in the above example. This grammatical difficulty might not be insuperable because the words might be considered either as surplusage as applied to "suffered to be kept" or as producing a cumbersome legal equivalent of the term "to keep." Also, we may assume that the phrases "in his possession" and "under his charge

or control" are such close equivalents that it would not result in duplicity to allege them in the alternative. But the difficulty of considering "on his premises" in conjunction with the term "suffer to be kept" as equivalent to "in his possession" or "under his charge or control" seems insuperable. There is no necessary implication of possession in the words "on his premises." For example, an owner of a building may lease it to a tenant and the tenant may be entitled to and may have exclusive possession of it; but if the landlord permits the tenant to keep alcoholic beverages on the premises for purposes of sale in violation of Article 2B of the Code, the landlord might be convicted under the "suffer to be kept" clause of Section 3(a), regardless of his lack of possession of either the premises or the alcoholic beverages. (We express no opinion, because it is unnecessary to the decision of this case, as to whether or not the landlord could properly be found guilty if he were without knowledge of the tenant's use of the property or if he were without power to prevent it if he did know of it.)

We then revert to the proposition that to keep alcoholic beverages on one's premises for purposes of sale in violation of law is a different offense from suffering or permitting them to be kept by someone else on one's premises for such purposes. Since we have found nothing in our examination of the statute in question which obliterates that difference, it follows that the indictments against Johnson and Weatherly which charged in one count the commission of one or the other of two different offenses proscribed by the statute were defective under the rule recognized in *Stearns v. State* and other cases above cited and that the motion to dismiss these indictments should have been granted. The judgments must therefore be reversed as to Johnson and Weatherly and their cases remanded. Nothing said in this opinion will prevent the return of indictments against them in proper form.

Two other appeals have no direct relation to the Johnson and Weatherly cases were presented along with

those cases on brief and in argument. The other two appeals, one by Mitchell Bonneville and the other by Harold Sterling, presented or sought to present the same question—whether an indictment was invalidated because only the initials and the surname, and not the full given names and the surnames of persons to whom the appellants were alleged to have sold liquor were stated. These appeals were abandoned in open court during the argument and the appeals in those cases will be dismissed.

Because of the technical nature of the principal question here involved with regard to the charging of offenses in the alternative and because it can easily be met by the use of separate counts and the trial court's power to require the State to elect between them, we are referring the matter to the Committee on Rules of Practice and Procedure to consider the formulation of a rule dealing with the subject.

> *Judgments as to Walter Johnson and Joseph Weatherly reversed and cases remanded; the costs in these cases to be Paid by the County Commissoners of Somerset County.*

> *Appeals of Mitchell Boneville and Harold Sterling dismissed, the costs to be paid by them.*