741 A.2d 1079

**MAYOR AND CITY COUNCIL OF BALTIMORE, et. al**

v.

**Carolyn BOITNOTT, et. al.**

**No. 17, Sept. Term, 1999.**

Court of Appeals of Maryland.

Sept. 23, 1999.

Reconsideration Denied Nov. 5, 1999.

Stephen A. Goldberg (David W. Kinkopf, Gallagher, Evelius & Jone, LLP, on brief); Sandra R. Gutman, Associate Sol. (Otho M. Thompson, City Sol., Frank C. Derr, Deputy City Sol., Baltimore City Dept. of Law, on brief), Baltimore, for petitioners.

John C. Murphy (Gerald R. Walsh, on brief), Baltimore, for respondents/cross-petitioners.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and ROBERT L. KARWACKI (Retired, Specially Assigned), JJ.

BELL, Chief Judge.

The issue this case presents for the Court's resolution is the meaning of the term "owned" for purposes of Maryland Code (1985, 1994 Repl.Vol., 1998 Cum Supp. ) § 6–102(e) and § 7–501 of the Tax–Property Article.[1] More specifically, we must ascertain whether record or legal title is sufficient to satisfy the ownership requirement of § 6–102. The Circuit Court for Baltimore City held that to satisfy the ownership requirement of § 6–102(e), the developers of the planned hotel and parking garage to be located in the Inner Harbor East area of Baltimore City would have to convey to the City more indicia of ownership than the record title that the Amended and Restated Development Agreement between the developers and the Mayor and City Council of Baltimore called for. The Circuit Court thereby invalidated the ordinance enacted by the Mayor and City Council authorizing payments in lieu of taxes ("PILOT") in the case of that hotel and garage. We and

---

1. Unless otherwise indicated, all future references are to the Tax–Property Article, Maryland Code (1985, 1994 Repl.Vol., 1998 Cum Supp.).

our precedents see it differently. Consequently, we reverse the judgment of the circuit court.

The facts of this case are not in dispute. Pursuant to Ordinances 97–229 and 97–231, enacted by the City Council and signed into law by the Mayor of the City of Baltimore [2], a hotel, to be developed by appellant Inner Harbor East Hotel, LLC ("IHEH"), and an accompanying garage, to be developed by appellant Inner Harbor East Garage, LLC ("IHEG"), are to be built on two parcels of land located in the Inner Harbor East section of the City and owned by appellant Inner Harbor East, LLLP ("HELP"), collectively "the developers." On April 23, 1998, the Baltimore City Council enacted Ordinance 98–253. That ordinance authorized the city to "exempt from municipal taxation hotel facilities ... that are on City-owned property within any urban renewal area and that, on or after January 1, 1998, are leased or otherwise made available to any person who uses the property in connection with a business that is conducted for profit and who is authorized to accept a PILOT in accordance with the terms and conditions of an agreement (a 'PILOT Agreement')" [3] and "to negotiate a PILOT Agreement in connection with any lease after January 1, 1998, of any City-owned property within any urban renewal

---

**2.** These ordinances have been the subject of other lawsuits filed against the Mayor and City Council of Baltimore and Inner Harbor East, LLLP. *See Waterfront Coalition, Inc., et al. v. Mayor & City Council of Baltimore, et al.,* Case No. 97364028/CC–9162, challenging Ordinance 97–229, which rezoned the property to allow for the construction of a hotel and parking garage, and *Carolyn Boitnott, et al. v. Mayor & City Council of Baltimore, et al.,* Case No. 98016013/CC–447, challenging Ordinance 97–231, both in the Circuit Court for Baltimore City. Like this case, the purpose of those actions was to prevent the construction of a hotel in Inner Harbor East. The dismissal of the Waterfront action was affirmed by the Court of Special Appeals in an unreported opinion. *Boitnott,* which also was affirmed by the intermediate appellate court, is pending in this Court.

**3.** Section 5 of the Ordinance defined hotel facilities as excluding gaming or gambling activities and provided that "all PILOT Agreements executed pursuant to this Ordinance must provide that the PILOT Agreement will terminate immediately if the property is no longer used as a hotel facility...."

area for use as hotel facilities. Section 4 of the Ordinance provides:

"That, for the purpose of this Ordinance, 'City-owned property' means any ownership interest held by the City in the applicable real property, including legal title to the property, whether in fee or as a leasehold interest, whether or not subject to ground lease, and whether now owned or later acquired by the City."

Consistent with the provision in Section 3 of Ordinance 98–253, that the economic terms of any PILOT "be approved by an Ordinance of the Mayor and City Council before the Board of Estimates gives final approval to the PILOT Agreement," the City Council, on that same day, enacted Ordinance 98–254, which specifically authorized the PILOT Agreement that is the subject of this action. That Ordinance set forth the findings of the Mayor and City Council that authorization of a PILOT is in the City's best interest because it would encourage economic development in the City, promote the creation of job opportunities, increase tourism, promote and improve the City and its facilities to the end of fostering and maintaining its positive image, and generally contribute to the health, safety and welfare of its citizens. It then authorized the City to negotiate PILOT Agreements that would be for a period of 25 years, with negotiated payments in lieu of taxes of $1 per year for the term of the agreements, and provide: that the City have an interest in the profits of the hotel facilities, for the City's acquisition of any land necessary for the effectuation of the PILOT Agreements and its lease, for a nominal amount, to the developers and owners of the hotel facilities, and for the inclusion of the assessment of the hotel facilities in the assessable base of the City.

Subsequent to the enactment of the Ordinances, the City entered into an Amended and Restated Development Agreement with HELP, IHEH and IHEG for the development of the property.[4] That agreement detailed the financial arrange-

---

4. As Ordinance 98–254 recited, the City had entered into a Development Agreement on July 23, 1997.

ments applicable to the planned development of the property. The pertinent terms of the agreement, as summarized by the trial court, are as follows:

"(1) Prior to the commencement of construction of the hotel and the garage, the property would be conveyed by HELP to IHEH and IHEG.

"(2) After the construction of the hotel and garage, they would be conveyed to the City for a consideration of ten dollars, such conveyance to occur prior to the opening date. The Agreement provides that the title to the City shall be good and marketable, and free of all liens and encumbrances 'other than easements and use of agreements created to accommodate the operation of the Hotel and Parking Garage, mortgage liens created by the developer and other liens and encumbrances which have been created by the Developer or are the result of Developer's acts solely related to the Hotel or the Parking Garage.'

"(3) At the end of the twenty-five year term, the City agrees to reconvey the property to the Developer for a consideration of ten dollars. The developer, however, in its sole discretion, may elect to have the City reconvey the property to it at any time, during any term, for the same consideration.

"(4) During the time the City owns the property, it is unable to convey the property nor is it able to place any liens or encumbrances on the property except those approved by the Developer. While the property is subject to lease to the Developer, the Developer has the sole right to the use of the property, and the City shall have no right to any use of the property.

"(5) The tenant shall have the right to perpetually renew the lease for additional successive terms of 25 years each. If the tenant does not give the City notice that it will not renew the lease, then the tenant will be deemed to have renewed the lease for the next term of 25 years without any further notice to the City.

"(6) Although the City cannot convey the property, the tenant has the right to assign the lease or sublet the premises or any portion of the premises without the landlord's consent.

"(7) Finally, the agreement provides that the City may receive a nine percent non-cumulative preferential return on its investment, which could amount to $594,000 per year, plus an additional ten percent of excess net cash flow."

On the same day, the City also entered into PILOT Agreements with IHEH and IHEG.

Carolyn Boitnott and Nelson H. and Lily Adlin, the appellees, filed a Complaint for Declaratory Relief in the Circuit Court for Baltimore City, seeking, *inter alia*, to have the Ordinances, the Development Agreement, and the PILOT Agreements declared invalid. In the Complaint, the appellees alleged that Ordinance 98–254 is invalid because the City will acquire only record title, rather than ownership, of the property to be leased to the developers, thus being unable to grant an exemption from the payment of municipal taxes to them.

In response, the City, HELP, IHEH, and IHEG, as appellants moved to dismiss the complaint, or in the alternative, for summary judgment. The non-City appellants also requested, again in the alternative, that the Ordinances, the Development Agreement and the PILOT Agreements be declared valid. Following a hearing, all of the appellants' motions were denied and the trial court declared the Ordinances invalid. In its memorandum opinion, focusing on the Development Agreement and noting the restrictions it placed on the City's use of the property to be deeded to it, the trial court observed, "[i]t does not seem . . . that this arrangement complies with any definition of ownership." [5] Having held that the City would not own the property under the Development Plan, the court stated:

---

5. The court concluded, ". . . the City is severely restricted in its use of the property. It can, in effect, do nothing with the property. It cannot mortgage the property; it cannot convey the property; indeed, it only holds the property at the sufferance of the defendant developer."

"If the Legislature had meant for a subdivision to have the authority to grant tax exemption with this limited and restricted degree of ownership, it would have so provided. Indeed the General Assembly may provide that a taxing authority may grant a tax exemption and negotiate a payment in lieu of taxes without any ownership interest. The Legislature did not do so.[ ] This court accordingly holds that the City exceeded the authority granted to it by the Legislature, and the tax exemption and PILOT granted by it to Defendant Developer are illegal and void."

Their timely filed Motions to Alter or Amend the Judgment having been denied, the appellants noted an appeal to the Court of Special Appeals and the appellees filed a cross-appeal, seeking the award of attorney's fees for bringing this action.[6] This court, on its own motion and prior to any proceedings in the intermediate appellate court, issued the Writ of Certiorari to review the important issues that this case presents.

## II.

Section 6–101 identifies the property that is subject to tax. It provides:

"(a) *In general.*—(1) Except as otherwise provided in this article, all property located in this State is subject to assessment and property tax and is taxable to the owner of the property.

"(2) Property subject to assessment and tax under this article includes property owned or leased by the United

---

**6.** In their cross-appeal, the appellees based their contention that they should be awarded attorney's fees on the premise that their suit saved the city from the loss that would have occurred had the exemption been allowed. Our decision on the appellant's appeal destroys that premise. Without that premise, the appellant's cross-appeal is without merit.

Appellees argue in their brief that the PILOT ordinances are invalid because they conflict with State law. That issue was neither presented to, nor decided by the trial court. Consequently, it is not preserved for our review. Maryland Rule 8–131(a). Although the Rule is discretionary, we decline to exercise our judgment in favor of review in this case.

States or any agency or department of the United States, to the fullest extent possible under the Constitution of the United States and the laws of the United States.

"(b) *Intangible personal property.*—Intangible personal property is not subject to assessment and property tax."

Section 7–210 [7] makes clear that government owned property, devoted to a governmental use or purpose and owned by certain governmental entities, including a municipal corporation, is not subject to tax. The interest or privilege of a person leasing or using such property may be subject to tax, however. Section 6–102(e) provides:

"(e) *Interests in government property.*—Unless exempted under § 7–211, § 7–211.1, or § 7–501 of this article, the interest or privilege of a person in property that is owned by the federal, the State, a county, or a municipal corporation government is subject to property tax as though the lessee or the user of the property were the owner of the property, if the property is leased or otherwise made available to that person:

"(1) by the federal, the State, a county, or municipal corporation government; and

"(2) with the privilege to use the property in connection with a business that is conducted for profit."

Except for Worcester County, Section 7–501(b) permits all counties, and the Mayor and City Council of Baltimore to

---

**7.** It provides:

"(a) *In general.*—Except as otherwise provided in § 6–102 of this article and except as otherwise provided under this section, government-owned property is not subject to property tax, if the property:

"(1) is devoted to a governmental use or purpose; and

"(2) is owned by: ·

"(i) the federal government;

"(ii) the State;

"(iii) a county or a municipal corporation; or

"(iv) an agency or instrumentality of the federal government, the State, a county, or of a municipal corporation.

"(b) *Limitation on agency or instrumentality ownership.*—The exemption provided for the property owned by an agency or instrumentality in subsection (a)(2)(iv) of this section applies only to the extent that a law exempts the property."

"authorize, by law, an exemption from county or municipal corporation property tax for the property described in § 6–102(e) of this article and provide for a negotiated payment in lieu of the tax."

It is by the application of § 6–102(e) and § 7–501(d), in combination, that the authority of the City to grant the exemptions in this case derives. Therefore, before the exemptions could be authorized, (1) the City must own the property, (2) which it then leases to a business that is conducted for profit, (3) after enacting an ordinance providing for a negotiated payment in lieu of taxes, and (4) that exempts the property from the payment of municipal taxes. Requirements (2), (3) and (4) have been satisfied. That leaves to be determined requirement (1), whether the City's acquisition of record title suffices to satisfy the ownership requirement.

Although not in the context in which it is presented in this case, this Court has addressed the question of who is the owner of property for purposes of the State real property tax law. *Johns Hopkins Univ. v. Bd. of County Comm'rs of Mont. Co.*, 185 Md. 614, 617, 45 A.2d 747, 748 (1946); *Grand Lodge of Maryland v. Mayor and City Council of Baltimore*, 157 Md. 542, 546, 146 A. 744, 746 (1929); *Latrobe v. Baltimore*, 19 Md. 13, 20, 21 (1862). The result reached in each of those cases is consistent with the definition of "own"—"[t]o have a good legal title ... to have a legal or rightful title to...." Black's Law Dictionary (6 th ed.1990) 1105. *See Baltimore & O.R. Co. v. Walker*, 45 Ohio St. 577, 16 N.E. 475, 480 (1888).

In *Johns Hopkins Univ.*, this Court reversed a trial court judgment in favor of the State Tax Commission in its action to recover taxes on real property titled in the University's name. The issue, whether taxing property held solely as agent or trustee for the United States results in taxing the United States, arose in the following context. Pursuant to a contract with an agency of the United States government, the University purchased land, on which it constructed a plant in which to conduct scientific research for the government. 185 Md. at 615–16, 45 A.2d at 747. It paid for the land, the plant, the cost

of the operations and the taxes, for all of which the government reimbursed it. *Id.* The contract between the University and the government agency provided, *inter alia:*

"'The Contractor (Johns Hopkins University) shall convey to the Government or to its designee, when and as directed by the Contracting Officer any lands purchased hereunder or under said agreement for the cost of which reimbursement is claimed hereunder or under said agreement, together with all buildings, improvements, rights, and privileges, and appurtenances belonging or appertaining thereto.'"

*Id.* at 616, 45 A.2d at 748.

Addressing the State Tax Commission's contention that the record owner, "under the Maryland law, is the owner for tax purposes and that the assessors are not required to go back of the Land Records in determining to whom property is assessable," the Court confirmed that "[t]he general rule is that unless otherwise prescribed by statute, the trustee as the owner of the legal estate would be assessed with the value of the land." *Id.* at 617, 45 A.2d at 748, quoting *Grand Lodge,* 157 Md. at 546–47, 146 A. at 746. Finding further support from Cooley on Taxation (4th Ed.) § 1097 ("By the owner of property for the purpose of assessment is meant the legal, and not the equitable, owner; therefore trustees having the legal title are properly assessed.") and *Latrobe* ("at law the legal estate in the hands of a trustee, has the legal incidents and obligations of an absolute title, subject only to the claims in equity of the *cestui que trust.*" 19 Md. at 21), we stated the rationale for the rule:

"This rule is commended by its utility, simplicity, and universality; and so makes for the certain and prompt collection of taxes upon real estate."

*Id.* at 617, 45 A.2d at 748.

That did not end the inquiry, however. Noting that "[i]f this was a case not involving property interests of the United States Government, the judgment of the Court below could not be questioned," *id.* at 618, 45 A.2d at 748–49, and finding *Mesta Machine Company v. County of Allegheny, Pa.,* 322

U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944) to be dispositive, the Court held that the government owned property titled in the University's name was immune from taxation, explaining,

"The title to the properties was in Hopkins, but, says the *Mesta* case, the title may be in 'an officer, an agent, or a contractor. His personal advantages from the relationship by way of salary, profit, or beneficial personal use of the property may be taxed as we have held. But neither he nor the Government can be taxed for the Government's property interest.' "

*Id.* at 620, 45 A.2d at 749–50.

To like effect is *Grand Lodge.* The issue in *Grand Lodge* was a charitable and benevolent corporation's entitlement to an exemption for the buildings, equipments and furniture of charitable and benevolent institutions. In that case, the Grand Lodge delegated to a building commission, which subsequently incorporated, the tasks of acquiring a new site for its use and benefit and conveying the real estate purchased to the Grand Lodge. Although subsequently conveyed to the Grand lodge, taxes were assessed and levied on the building at times when it was titled in the building commission "upon the active trust that it, among other duties, would purchase the site and erect and complete thereon a building, which, together with its site, would be necessary to the use of the Grand Lodge, a charitable and benevolent institution of Baltimore; and, after fulfilling this part of its trust, would, in further performance of its trust, deliver possession, and convey the premises to the Grand Lodge clear and discharged of the trust." 157 Md. at 546, 146 A. at 746. The Grand Lodge argued that, inasmuch as the taxes paid by the trustee are actually borne by the beneficial owner, the general rule should not be applied, rather the beneficial owner should be given the benefit of the exemption. This Court rejected that argument:

"To reach this conclusion it is, however, necessary to abandon a principle of taxation without any sanction from the Legislature, and to ignore a construction of the tax laws of the state which the court has consistently applied. It would, moreover, enlarge the exemption to include a class of

taxpayers which are not within the language of the statute, and which can only be held to be within its meaning by a broad and liberal construction, which would be equivalent to a legislative act. If the court would entertain such a purpose because of equitable considerations, the Legislature has barred the way by concluding the exemptions created by the explicit command that 'each and every one of said exemptions from taxation shall be strictly construed.' "

*Id.* at 548, 146 A. at 746, citing Code Pub. Gen. Laws 1924, art. 81, § 4.

*Johns Hopkins Univ.* and *Grand Lodge* relied on *Latrobe;* indeed, *Grand Lodge* found *Latrobe* to be dispositive of the issue before it. In addition to stating that, for real estate tax purposes, ownership is "the holding or ownership of the legal estate of the property to be valued, without regard to the ownership of the equitable title or use," 19 Md. at 21–22, the *Latrobe* Court commented:

"We are not aware that the Acts of Assembly, regulating the imposition and collection of taxes, have effected any modification of the rules of law, which otherwise must govern the determination of this question. The appellee, in resorting to its remedy at law, assumes that the taxes assessed constitute a legal cause of action, and that the appellant"(who was the trustee), "as the holder of the legal title of the property upon which the assessment was made, is liable for its satisfaction. That taxes assessed upon a trust estate constitute a legal cause of action against the title of the legal holder, we do not doubt, for at law the legal estate in the hands of the trustee, has the legal incidents and obligations of an absolute title, subject only to the claims in equity of the *cestui que trust.*" (Citations omitted).

19 Md. at 20–21.

The appellees proffer two reasons for their contention that the circuit court judgment should be affirmed. First, they argue that since the developers can perpetually lease the property, pursuant to § 6–102(d), the developers should be treated as the owner for tax purposes. Second, the appellees

maintain that the developers, not the City, will own the property. For support, they rely on the terms of the Development Agreement, noting their restriction of the City's right to use the property, and the definition of "owner" as defined in MLE, Property, § 3, p. 218,[8] and "ownership" as defined by Black's Law Dictionary 1107 (6th ed.1991),[9] concluding that,

"The City has none of the incidents of the ownership of property. It doesn't have the right of possession, and will never have it. It has no right of enjoyment, and receives no income from the property. It cannot dispose of the property. Moreover, the title it receives is subject to any mortgages or other liens."

"At most the City has only the bare record title," they argue. Pointing to § 6–102(c) and (d), the appellees assert that the statutory scheme for tax exemptions emphasizes the beneficial use of property rather than the technicalities of ownership. We do not agree.

Section 6–102 provides, in pertinent part:

"(a) Except as otherwise provided in this section, a leasehold or other limited interest in property is not subject to property tax.

"(b) An interest of a life tenant or the owner of any other freehold estate in property is subject to property tax as though the person in possession or the user of the property were the owner of the property.

"(c) An interest of the mortgagor, pledgor, or conditional sale buyer in personal property is subject to property tax as

---

8. MLE, Property, § 3, p. 218 states:

"An owner is one who has dominion over the property which is the subject of ownership, and the chief incidents of the ownership of property are the rights of possession, of use, of enjoyment, and of disposition."

9. Black's Law Dictionary 1107 (6th ed.1991) defines "ownership" as:

"Collection of rights to use and enjoy property, including right to transmit it to others....The complete dominion, title, or proprietary right in a thing or claim. The entirety of the powers of use and disposal allowed by law."

though the person in possession or the user of the personal property were the owner of the personal property.

"(d) The following interests in real property are subject to property tax as though the person in possession or the user of the property were the owner of the property:

"(1) an interest of a tenant under a 99-year lease, whether or not the lease is renewable;

"(2) an interest of a tenant under a lease for less than 99 years, if the lease is perpetually renewable; and

"(3) an interest of a mortgagor or grantor under a deed of trust."

Under this section, the holders of certain leasehold interests are treated as owners of the property, even though clearly they are not. As the appellants point out, "[t]he only interpretation under which a lessee can be treated 'as though' it were the owner is if someone else—here, the municipality—were the owner." *See Meade Heights, Inc. v. State Tax Commission,* 202 Md. 20, 27–28, 95 A.2d 280, 284 (1953) ("The provisions of Section 3(c), Article 81, Code of 1951, providing that the owner of certain limited interests in real and personal property shall be treated as the owner in fee for purposes of taxation, merely allows the person in possession to be taxed on the whole interest, where the whole interest is taxable, for the convenience of the tax authorities.").

Thus, if the appellees are correct, the above provisions are of no importance at all and, in fact, are mere surplusage. *See GEICO v. Insurance Commissioner,* 332 Md. 124, 132, 630 A.2d 713, 717 (1993) (neither the words in the statute nor any portion of the statutory scheme should be read "so as to render the other, or any portion of it, meaningless, surplusage, superfluous, or nugatory." ). *See also, DeBusk v. Johns Hopkins,* 342 Md. 432, 445, 677 A.2d 73, 79 (1996). Rather than having to resort to treating them as though they were the owners of the property, the leaseholders would be deemed, by virtue of their equitable incidents of ownership, to be the owners of the property.

The appellees' rationale would render § 6–102(e) meaningless as well. In order to grant an exemption and negotiate a PILOT, it is necessary for a municipal government to give up and forego many of the incidents of ownership. Indeed, that is the very premise on which the enabling legislation, and the reality of lease arrangements, proceed. As the appellants state it:

> "Indeed, by definition, the state PILOT law (§ 7–501(b)) actually requires that the City, as owner, lease the property to a for profit entity (§ 6–102(e)). To grant a PILOT under § 7–501, the City must forego certain incidents of ownership (e.g., use and possession) by leasing the property to a private entity. Thus, by definition, the City always [has] less than a perfect, unencumbered estate in the property for which it negotiates a PILOT because the statute requires the City to have leased the land. If by leasing its property the City loses its status as owner, then no PILOT could ever be validly granted under § 7–501(b) because the requirements of § 6–102(e) could never be met."

Moreover, as *Johns Hopkins Univ.* indicated, citing *Hill v. Williams*, 104 Md. 595, 603–604, 65 A. 413, 414 (1906), the rule that, for purposes of assessment, owner means legal title "is commended by its utility, simplicity, and universality; and so makes for the certain and prompt collection of taxes on real property." 185 Md. at 617, 45 A.2d at 748. Simplicity is lost when inquiry must be made into the number of incidents of ownership that the legal title holder has retained. Furthermore, we recognized in *Grand Lodge* that "tax assessors are but ill qualified to exempt real property according to equitable interests; and the valuation and assessment of land are an administrative function which a sound public policy would reduce to its simplest form." 157 Md. at 550, 146 A. at 747. (citing *Hill v. Williams*, 104 Md. at 603, 65 A. at 414). *See Meade Heights*, 202 Md. at 27–28, 95 A.2d at 284.

*Hill v. Williams*, on which *Johns Hopkins Univ.* and *Grand Lodge* relied, was an appeal from an order ratifying the sale of certain real estate by the Baltimore City tax collector to satisfy unpaid state and city taxes. An abutting property

owner filed exceptions to the ratification on the grounds that the lot of land designated as a vacant lot was an alleyway. As evidenced by her deed, the use by the abutting property owners was dedicated as an alleyway. Noting that she was the owner of a lot of ground binding on the alleyway and shared with the public an easement over it, the exceptant suggested that the lot was not a proper subject for taxation. In overruling the exceptions, the Court stated:

> "[The alleyway] was designed for the use of the occupants of the three lots conveyed by the Slingluff deed to Mrs. Hill, and the only interest or estate acquired by the grantee under that deed in that strip of ground was a right of way from Pennsylvania avenue to the four-foot alley in the rear of her three lots. As the fee-simple title remained in the Slingluff estate, the land was properly assessed to that estate. It was no part of the duty of the appeal tax court to inquire into or separately value the interest or easement which Mrs. Hill secured under the deed. And there is nothing in our general tax system which compels the collector to examine what title a party has to land with which he is assessed. The assessments are made by other officers, and he is not required to review or to verify their proceedings before making a sale.... It is not compatible with public convenience and the prompt collection of revenue for the state to trace out all the subdivided or qualified interests that may be held in real estate and seek to hold the various owners responsible. Its policy is to assess the fee-simple value of the land to the holder of the possession, where its real owner is not apparent or accessible, leaving the parties interested to adjust the proportions of liability between themselves. *Mayor, etc., Balto. v. Canton Co.,* 63 Md. 218 [ (1885) ]."

*Hill v. Williams,* 104 Md. at 603–4, 65 A. at 414. *See Eberhart v. Mayor and City Council of Baltimore,* 291 Md. 92, 115, 433 A.2d 1118, 1129 (1981), in which this Court, focusing on the transaction as structured, rather than looking

behind it, held that a sale-leaseback arrangement was not the creation of debt in violation of the Maryland Constitution. [10]

■ That the parties, by their Amended and restated Development Agreement, have restricted drastically the City's right to use or enjoy the property is not fatal to the City's ownership claims. As we have seen, some restriction in the indicia of ownership is inherent in the lease of property. See *Bonneville v. State,* 206 Md. 302, 314, 111 A.2d 669, 674(1955) (acknowledging that an owner of a building may lease it to a tenant and the tenant may be entitled to and may have exclusive possession of it). Ownership for tax purposes is not

---

**10.** The appellees attempt to align the instant case with our decision in *Alban Tractor Co. v. State Tax Commission,* 219 Md. 593, 150 A.2d 456 (1959). That case proves the wisdom of the observation " 'that the term 'owner' is a 'nomen generalissimum, and (that) its meaning is to be gathered from the connection in which it is used, and from the subject matter to which it is applied.' ' " *Commercial Credit Corp. v. State,* 258 Md. 192, 197, 265 A.2d 748, 751 (1970), quoting Black's Law Dictionary (4th ed.1951). There, this Court was presented with the issue whether a conditional sales agreement was, in actuality, a lease, rather than a sale. Noting that "[a] lease contemplates only the use of the property for a limited time, and the return of it to the lessor at the expiration of that time; whereas, a conditional sale contemplates the ultimate ownership of the property by the buyer, together with the use of it in the meantime," *id.* at 597, 150 A.2d at 459, we determined that the transaction was a sale since it was "clear that the title reserved by the seller in the property when it was delivered to the buyer was in effect a reservation of a 'security interest.' " *Id.* at 598, 150 A.2d at 459. We also concluded: "The judicial concept of taxation in this State and the consistent administrative practice shows that the Legislature in using the term 'owner' did not intend that such term should embrace a bare title holder for security purposes." *Id.* at 601, 150 A.2d at 461. This Court, therefore, rejected the State's argument based on how the parties described the transaction and the "lessor's" retention of "title." *Id.* at 598, 150 A.2d at 459.

*Alban,* however, presents a quite different factual scenario than the case at bar. First, it dealt with tangible personal property, as to which, we have previously recognized, different rules apply than to real estate. *Johns Hopkins Univ. v. Bd. of County Comm'rs of Mont. Co.,* 185 Md. 614, 617–18, 45 A.2d 747, 748 (1946). Moreover, as noted by the developers, *Alban* does not stand for the general proposition that anytime a title holder leases away its right to use or occupy real property it is the owner. It merely confirms the firmly established rule that, in personal property cases, individuals with title for security purposes only, are not taxed as owners. We decline to apply the *Alban* holding to the instant case.

relinquished by contracting away what, in the absence of the lease arrangement, ordinarily would be an absolute right of the lessor. *See* Black's Law Dictionary (6th ed.1990) 1105, in which "owner" is defined as "the person in whom is vested the ownership, dominion, or title of property; proprietor. He who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases, even to spoil or destroy it, as far as the law permits, *unless he be prevented by some agreement or covenant which restrains his right.*" (Emphasis supplied). That same authority states that "[t]he term 'owner' is used to indicate a person in whom one or more interests are vested for his own benefit [but t]he person in whom the interests are vested has 'title' to the interests whether he owns them for his own benefit or for the benefit of another." *Id.* And, if a municipal corporation is to grant an exemption and negotiate a PILOT, the lease of the property owned by the municipal corporation is anticipated—no—required, by § 6–102(e).

*JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY REVERSED. COSTS TO BE PAID BY THE APPELLEES.*